UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

NORMA BALBUENA, individually and on behalf
of all others similar situated,

                      Plaintiff,

          - against -

JOHN  MATTINGLY, individually and as
Commissioner, H. AURELIA JEMMOTT,
individually and as Reviewer, RAFAEL ORTIZ,
JR., individually and as Borough Director,
VERONICA CHEVRESTT, individually and as
caseworker, CARMEN DEL VALLE, individually
and as supervisor, EPISCOPAL SOCIAL
SERVICES, ROBERT GUTHEIL, individually and
as director, CARMEN SANTANA, individually and
as supervisor, LOURDES FALCON, individually
and as caseworker, ZORAIDA NEGRON,
individually and as social worker, THE CITY OF
NEW YORK, and JOHN JOHNSON, as
Commissioner,

                    Defendants.

------------------------------------------------x

05 Civ. 2986 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/07

This is a civil rights action brought by plaintiff Norma Balbuena

against John Mattingly, the Commissioner of the New York City

Administration for Children's Services ("ACS"), H. Aurelia Jemmott,

Rafael Ortiz, Jr., Veronica Chevrestt, Carmen Del Valle, and the City of

New York (collectively "City Defendants"); John Johnson, Commissioner

of the New York State Office of Children and Family Services ("State

Defendant"); and Robert Gutheil, Carmen Santana, Lourdes Falcon,

Zoraida Negron, and Episcopal Social Services ("ESS") (collectively

"Agency Defendants").  Balbuena claims the removal of her two nieces

from her kinship foster home violated her rights under the Fourth and

Fourteenth Amendments of the United States Constitution, in addition to her rights under New York law. Plaintiff seeks injunctive and declaratory relief, as well as damages under 42 U.S.C. § 1983.

The State and Agency Defendants have filed separate motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The motions are granted.

## PROCEDURAL HISTORY

Balbuena filed her original complaint on Mar. 18, 2005. State Defendant filed a motion to dismiss the complaint on June 13, 2005. On Nov. 29, 2005, Balbuena filed an amended class action complaint. Because State Defendant answered this complaint on Feb. 27, 2006, State Defendant's motion to dismiss the Mar. 18, 2005 complaint was denied as moot in a Mar. 17, 2006 opinion issued by this court. On Apr. 10, 2006, City Defendants filed an answer to Balbuena's Nov. 29 amended complaint. On May 12, 2006, Agency Defendants answered the amended complaint.

Also on May 12, 2006, State Defendant filed his motion for judgment on the pleadings. Agency Defendants filed their similar motion for judgment on the pleadings on July 14, 2006. City Defendants have not filed a motion.

## FACTS

The following statement of facts is based on the complaint, as well as facts from the administrative record ("the Record"). Both plaintiff and

defendants reference the Record in their pleadings and in their briefs. Thus, it may be considered on the motions for judgment on the pleadings.

Until Dec. 1, 2004, A.C. and H.C. were living with their paternal aunt, Norma Balbuena. Balbuena had been the appointed foster mother for A.C. since Oct. 20, 2003, and for H.C. since Nov. 14, 2004. She began caring for A.C. 12 days after her birth, and for H.C. at the time of birth. Both A.C. and H.C. are ultimately in the legal custody of the City of New York.

Balbuena alleges that on Nov. 30, 2004, defendant Santana, an Agency Defendant, informed Balbuena that ESS would like her to adopt A.C. if and when parental rights were terminated.

A.C. is severely developmentally delayed. Thus, ESS instructed Lauren Robinson, an occupational therapist, to conduct therapy sessions with A.C. two times a week for half-hour sessions. After her seventh session, also on Nov. 30, 2004, Robinson reported concerns to the agency about the state of Balbuena's home.

In response to Robinson's report, at 10 a.m. on Dec. 1, 2004, Agency Defendants Negron and Falcon made an unannounced visit to Balbuena's home to inspect it. Negron and Falcon then orally reported their observations to the agency and waited outside the home for instruction.

Several hours later, ESS instructed Negron and Falcon to remove the children on an immediate basis. When defendants Negron and Falcon removed the children, they gave Balbuena a written "notice of removal" stating the reasons for the removal to be "dirty laundry, no food, strangers in the home, and lit candles." Negron and Falcon also advised Balbuena of her right to a conference, referred to as an "Independent Review," with the New York City Administration for Children's Services.

Balbuena requested an Independent Review, and on Dec. 13, 2004, City Defendant Jemmott presided over this conference. Balbuena's complaint alleges that she was not permitted to bring an attorney with her to the Independent Review. However, the minutes of the hearing reflect that Balbuena's daughter Nicaury testified that she called ACS to ask if the review could be put off in order for Balbuena to find an attorney. She further testified that ACS told her they could put off the review for one month, but that her mother ultimately decided she did not want to put the Independent Review off for a month so decided to proceed without representation.

On Dec. 29, 2004, Defendant Jemmott issued a "Decision after Independent Review" upholding the removal. He discussed the agency's report of the home, including the lit candles and lack of food, and stated that the children should not be returned to Balbuena's home because of the conditions of the home as reported by the agency, the reports of unknown persons in the home, the fact that A.C. and H.C. were

sometimes left in the care of teenagers, and the lack of adequate space for occupational therapy sessions.

After the Dec. 29, 2004 decision, Balbuena could have requested a fair hearing at any time to contest Jemmott's decision. Balbuena did not file for this hearing until Feb. 28, 2005, two months after the Independent Review decision.

The hearing was then held on Mar. 29, May 16, May 20, and May 31, 2005, in front of a State Office of Children & Family Services ("OCFS") Administrative Law Judge, Sallie Farrow. The minutes of the record do not indicate why there was a delay between the Mar. 29 and May 16 hearing dates, nor is there any record in the minutes of any objection to this delay.

During the hearing, Balbuena was represented by counsel at all times. Balbuena's counsel gave opening and closing statements, presented witnesses, and cross-examined the agency's witnesses. Specifically, Balbuena's counsel cross-examined ESS caseworker Lourdes Falcon, who participated in the immediate removal, and Lauren Robertson, the occupational therapist whose complaints led to the immediate removal. Balbuena and her daughter Nicaury, among others, testified on Balbuena's behalf.

On Aug. 9, 2005, OCFS issued a decision affirming the Decision after Independent Review. The decision was issued by John Franklin Udochi, the OCFS Commissioner's designee from the Bureau of Special

Hearings. Summarizing the testimony and stating that Balbuena
presented much conflicting testimony, Udochi found that the "hearing
substantiates the legitimacy of the Agency's concerns regarding
conditions in Appellant's home." He further determined that there was
"sufficient evidence to establish that the Agency had grounds to remove
A.C. and H.C. from Appellant's foster care home" and it was "well within
the Agency's discretion" to do so.

## STATUTORY REGIME

The following is background information concerning the New York
statutory regime that is helpful to understand before addressing
Balbuena's claims.

### Removal of Children from Foster Parents

The New York State Department of Social Services Regulations
govern the removal of a child from a foster parent by an authorized
agency, and provide for notice and an opportunity for the foster parent to
be heard. 18 N.Y.C.R.R. § 443.5. In New York City, in conformance with
these regulations, ACS has promulgated an Independent Review Protocol
("Protocol") which more specifically outlines the procedures to be followed
in connection with a removal.

The state and ACS regulations provide for certain procedures to be
carried out in advance of the removal of a child where immediate removal

is not necessary.  But, these regulations are not relevant to the present case.

The Social Services Regulations permit immediate removal without advance notice to the foster parent where such removal is necessary to protect the health and safety of the child.  Id. § 443.5(a)(1).  New York City Protocol requires that where there is immediate removal, notice be given to the foster parent via Form CS-701D at the time of the removal or as soon as is practicable.  Protocol ¶ II.A.  The notice must explain the reason for removal and must advise the foster parent that she can request a conference with a social services official at which she can appear, with representation, to challenge the removal.  18 N.Y.C.R.R. § 443.5(a)(2); Protocol ¶ II.A.  Once a conference is requested, it must take place within ten days.  18 N.Y.C.R.R. § 443.5(b); Protocol ¶ III.A.

The Independent Review

In New York City, this conference, called an "Independent Review," is held at ACS, and is conducted by an ACS Child Welfare Specialist Supervisor.  The Protocol requires attendance of a representative of the foster care agency at the conference.  In addition, the Protocol requires the attendance of the foster parent, who is entitled to be accompanied by a representative of her choice.  Id. ¶ IV.C.

The Independent Review is conducted as a social work conference. Id. ¶ IV.D.  The Reviewer interviews everyone in attendance and makes his decision on the basis of the interviews and pertinent reports and

documentation.  Id.  The Protocol emphasizes that the review is not a legal proceeding.  The rules of evidence do not apply.  The foster parent's attorney may not question other participants and may not object to questions asked by the Reviewer.  The Reviewer decides what documents participants are entitled to receive, and the Reviewer may accept documents at the review and not disclose them where confidentiality considerations make disclosure inappropriate.  Id. ¶¶ IV.D-F.

The Reviewer must render a decision within five days of the Independent Review and the foster care agency must comply with the decision.  Id. ¶ V; see also 18 N.Y.C.R.R. § 443.5(c).  The decision must advise the foster parent of her right to appeal to OCFS and request a fair hearing in accordance with S.S.L. § 400.  18 N.Y.C.R.R. § 443.5(c).

The Fair Hearing

If the foster parent disagrees with the Reviewer's resolution of the Independent Review, she may appeal to OCFS and request a fair hearing before a state administrative law judge ("ALJ").  N.Y. Soc. Serv. Law §§ 22, 400; 18 N.Y.C.R.R. § 358.  At the hearing, a foster parent has the right to be represented by an attorney, offer witnesses and documentary evidence, question witnesses, examine documents offered by the social services agency, and seek review by a court if the decision is not in her favor.  18 N.Y.C.R.R. § 358-3.4.  The Social Services Regulations outline how the ALJ is to conduct the hearing.  Specifically, the ALJ must:

(1) preside over the fair hearing and regulate the conduct and course of the fair hearing, including at the hearing officer's discretion, requiring sworn testimony, and administering the necessary oaths;

(2) make an opening statement explaining the nature of the proceeding, the issues to be heard and the manner in which the fair hearing will be conducted;

(3) elicit documents and testimony, including questioning the parties and witnesses, if necessary, particularly where the appellant demonstrates difficulty or inability to question a witness; however, the hearing officer will not act as a party's representative;

. . .

(6) adjourn the fair hearing when in the judgment of the hearing officer it would be prejudicial to the due process rights of the parties to go forward with the hearing on the scheduled hearing date;

(7) review and evaluate the evidence, rule on the admissibility of evidence, determine the credibility of witnesses, make findings of fact relevant to the issues of the hearing which will be binding upon the commissioner unless such person has read a complete transcript of the hearing or has listened to the electronic recording of the fair hearing;

(8) at the hearing officer's discretion, where necessary to develop a complete evidentiary record, issue subpoenas, and/or require the attendance of witnesses and the production of books and records; and

(9) prepare an official report containing the substance of what transpired at the fair hearing and including a recommended decision to the commissioner or the commissioner's designee.

Id. § 358-5.6(b).

The Commissioner of OCFS's designee issues the decision on behalf of the Commissioner. N.Y. Soc. Serv. Law § 22(2). The decision must be in writing; must be based exclusively on the fair hearing record; must set forth the fair hearing issues, the relevant facts, law, regulations, and approved policy, if any, upon which the decision is based; must make findings of fact, determine the issues and state reasons for the

determinations; and, when appropriate, must direct specific action to be taken by the authorized agency.  18 N.Y.C.R.R. § 358-6.1(a).

The Commissioner's decision is binding upon the social services district (and the authorized agency) and must be complied with promptly. N.Y. Soc. Serv. Law § 22(9); 18 N.Y.C.R.R. § 358-6.4(a).  If the decision is adverse to the foster parent, she may seek judicial review in New York Supreme Court pursuant to Article 78 of the New York Civil Practice Law and Rules.  N.Y. Soc. Serv. Law § 22(9).

## CLAIMS FOR RELIEF

### Claims Against Agency Defendants

The complaint alleges that Agency Defendants removed A.C. and H.C. without probable cause, adequate investigation, or due process of law, and that the removal and detainment of the children unlawfully interfered with Balbuena's right to custody in violation of the Fourth and Fourteenth Amendments.

It further alleges that Agency Defendants have a policy of removing children from kinship foster parents without probable cause, investigation, or due process of law.

### Claims Against State Defendant

The complaint alleges that the procedures established by the New York State regulations regarding removal of children from foster care do not afford due process and violate the Fourth and Fourteenth Amendments.  It is alleged that the procedures as applied to Balbuena in

the removal of A.C. and H.C. violated Balbuena's constitutional rights. The complaint alleges that the administrative hearing decision was arbitrary and capricious, contrary to law, and not supported by substantial evidence pursuant to N.Y. C.P.L.R §§ 7803(3), 7803(4), and 7804.

## DISCUSSION

### Judgment on the Pleadings Standard

When deciding a motion for judgment on the pleadings under Rule 12(c), the court must follow the same standard that applies for a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1999). Thus, the court must accept as true all allegations contained in the complaint, and must draw all reasonable inferences in favor of the non-movant. Shechter v. Comptroller of New York, 79 F.3d 265, 270 (2d Cir. 1996).

Further, when deciding a Rule 12(c) motion, the court shall consider "the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## **Plaintiff's Due Process Claims**

The causes of action in the complaint, with exceptions discussed later, are almost all claims of violation of the right to due process. In order for Balbuena to establish a violation of due process, she must be able to show first, that she has a liberty interest, and second, that in light of this liberty interest, she was not provided due process.

While the motions of the State Defendant and Agency Defendants for judgment on the pleadings vary slightly, both motions assert that Balbuena has failed to make a sufficient case on either of the above issues.

Plaintiff's Liberty Interest

The Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Thus, if no liberty or property interest is implicated, no process is due to the individual under the Fourteenth Amendment. Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

Rivera v. Marcus, 696 F. 2d 1016, 1025 (2d Cir. 1982), discussed in depth the issue of whether a kinship foster parent has a liberty interest in her foster family. Kinship means some blood relationship. The opinion noted that the liberty interest related to the liberty of family life, the issue being whether the relationship between a foster parent and a foster child constitutes a family.

The court concluded, based on numerous authorities, that the relationship between a kinship foster parent and a child can surely be a family relationship. On the question of whether such a family relationship exists in a given case, the court did not approve of the idea of general guidelines, but certainly indicated that the main factors would be the biological relationship between the parties and the degree to which a bond had been established.

In that case, the foster parent was the half-sister of the children and had cared for the children almost since birth. The court held that there was a liberty interest requiring due process protection.

The factors in the Balbuena case are equally strong in establishing a liberty interest. Balbuena is the aunt of the children. The children came to live with Balbuena essentially at their birth, creating a relationship as strong as the one in <u>Rivera</u>.

## Due Process

In <u>Smith v. Org. of Foster Families for Equality & Reform</u> ("OFFER"), 431 U.S. 816 (1977), the Supreme Court upheld the New York procedural regime for removal of children, as applied to foster parents, whom they assumed, for argument's sake, had a protected liberty interest. While the statutory citations have changed and the regulations have been slightly altered, the procedures that were upheld in <u>OFFER</u> remain essentially the same.

Nevertheless, in order to deal with the specific issues raised in this case, the court will review the New York procedural scheme in some detail.

## The Removal

Aside from the objections to various phases of the post-removal procedures, Balbuena contends that there should never have been a removal in the first place because the removal was unconstitutional.

N.Y.C.R.R. § 443.5(a)(1) permits removal without advance notice to the foster parent where "immediate removal is necessary in order to protect the health and safety of the child." The <u>Rivera</u> opinion states that any liberty interest kinship foster parents are found to have does not limit "the police power of the state to remove a child from a foster home prior to a hearing in cases of serious neglect, abuse, or other emergency." 696 F.2d. at 1029.

The parties' memoranda briefly discuss what standard should apply to justify an immediate removal from a kinship foster parent without a prior hearing or process.  Balbuena asserts that her case, involving a kinship foster parent, should be governed by the same standard as applies to removal in the situation of a natural parent and child.  To remove a child from a parent without prior judicial authorization, the authorities must show that there is an "objectively reasonable basis for believing that a threat to the child's health or safety

is imminent." Gottlieb v. County of Orange, 84 F.3d 511, 520 (2d Cir. 1996).

Defendants cite the language of Rivera which states that a child may be removed from a kinship foster home in cases of "serious neglect, abuse or other emergency." There is some debate about whether Rivera articulates a less strict standard than in the natural parent case. This court will not attempt to deal with the formulation of a specific standard for removal of children from kinship foster homes. The court simply holds that under the facts presented here, it was permissible to remove A.C. and H.C., subject to providing Balbuena with a reasonable opportunity subsequently to overturn the action which had been taken.

The reasons stated in the written notice for removal of A.C. and H.C. at the time of removal were "dirty laundry, no food, strangers in the home, and lit candles." Lack of food, persons not known to the agency in the foster home without the agency's permission, and potential for fire can all be dangerous for a young child, particularly for a developmentally disabled child and a baby. The court holds that these were sufficient reasons for the immediate removal of A.C. and H.C., consistent with constitutional rights.

Balbuena challenges the facts presented in the notice. However, the opportunity that was given to her to challenge these facts provided her with sufficient due process.

Additionally, Balbuena has provided no evidence that State and Agency Defendants have a policy of removing children without proper investigation or due process of law, or that the agency has failed to adequately train or supervise its employees. Conclusory statements stating such a claim are not sufficient to withstand a motion for judgment on the pleadings.

### The Post-Removal Proceedings

The complaint alleges that State Defendant committed several due process violations in the course of proceedings after the removal. The complaint mainly concerns the New York state regulations and the process they provide for. With minor exceptions, to be discussed below, the complaint does not allege a failure to follow the regulations as written. It simply alleges that the regulations, as written, do not satisfy due process.

It is not difficult to determine what the due process requirements are in the case of an immediate removal. Although the Supreme Court decision in OFFER, 431 U.S. 816 (1977), and the Second Circuit opinion in Rivera, 696 F. 2d 1016 (2d Cir. 1982), did not deal with immediate removals, the teachings of these cases, and other cases, can be readily applied to the Balbuena situation. Thus, the requirements of due process, where there has been an immediate removal, are:

1) Prompt notice of the reasons for removal;
2) An opportunity for a hearing before an impartial hearing officer;

3) The right of the foster parent to appear at that hearing and be represented by counsel;

4) The right to present evidence, including witnesses, and to confront and cross-examine opposing witnesses;

5) A written decision making findings of fact and explaining necessary conclusions; and

6) A reasonable process of review.

All of these procedural safeguards are provided for under New York law, and all of them were afforded to Balbuena in this case.

New York law requires that timely and adequate notice of the reasons for termination be given.  18 N.Y.C.R.R. § 443.5.  As discussed earlier, Balbuena was given this notice.

New York law grants kinship foster parents the right to be represented by an attorney at the OCFS hearing.  Id. § 358-3.4. Balbuena was represented by counsel for the administrative hearing. However, she alleges that the failure to provide for appointed counsel for foster parents at the hearing violates due process.  Because Balbuena had counsel at the hearing, she has no standing to bring this claim. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

New York law provides the right to "participate at your conference and fair hearing, to explain your situation, to offer documents, to ask questions of witnesses, to offer evidence in opposition to the evidence presented by the social services agency and to examine any documents offered by the social services agencies."  18 N.Y.C.R.R. § 358-3.4. Balbuena did exactly this.  Her attorney gave opening and closing

arguments. Two members of her family and she testified about the events leading up to the removal of the children.

The right to ask questions of witnesses surely includes the cross-examining of witnesses, something that was in fact done at the Balbuena hearing. Balbuena contends that the fact that, under § 358-5.9, the hearing officer has discretion to admit hearsay and need not apply traditional rules of evidence interferes with her right to confront and cross-examine adverse witnesses. However, there is no constitutional requirement that specific rules of evidence must apply in order for an administrative hearing to comport with due process.

Balbuena alleges that the hearing decisionmaker is a designee of the Commissioner of OCFS and thus not a "neutral arbiter," violating due process. In Rivera, the court found constitutionally inadequate the situation in which the Connecticut hearing panel was comprised of "two Department employees and one social worker from a private agency that often relies on the state for its business—who arguably have vested interest in deferring to the opinions of the Commissioner." Rivera, 696 F.2d at 1027. However, the Rivera court emphasized that that panel's decision was not required to be explained in writing and was not appealable in another forum. New York law, conversely, provides both of these protections.

Under New York law, the administrative hearing decisionmaker is required to make a decision in writing based exclusively on the fair

hearing record. 18 N.Y.C.R.R. 358-6.1(a). Here, Balbuena was provided a written statement explaining the decision and a summary of the evidence in support thereof.

Any decision made by the hearing officer is appealable to the state courts pursuant to Article 78 of the New York Civil Practice Laws and Rules. N.Y. Soc. Serv. Law § 22(9).

In addition to providing the above protections, after an immediate removal, New York provides for an initial conference, called the Independent Review. The Independent Review is meant only to be a method of ensuring that, should the immediate removal have been unjustified, the foster parent has an opportunity to rectify the situation as soon as possible. Citing Rivera, Balbuena argues that the Independent Review does not have all the necessary due process protections, such as the right to cross-examine witnesses. While this appears to be the case, the Independent Review Protocol specifically states that the Independent Review is not meant to be a legal proceeding. It is supplemental to the due process protections provided by the administrative hearing.

In OFFER, the Supreme Court held that NY's regulations regarding the Independent Review, followed by the hearing, were constitutional. 431 U.S. 816 (1977). Further, the Second Circuit has held that a combination of informal and formal proceedings, along with the ability of state court review, satisfies due process.  Signet Constr. Corp. v. Borg,

775 F.2d 486, 492 (2d Cir. 1985). Thus, any procedural shortcomings
with the Independent Review are rectified by the hearing that can be
immediately requested, and thus do not rise to the level of constitutional
due process violations.

Balbuena also alleges due process violations in the regulations and
her administrative hearing that are outside the scope of the fundamental
due process protections required by OFFER and Rivera.

First, Balbuena alleges that the New York state regulations violate
due process because the agency need only support the propriety of the
removal with "substantial evidence," rather than with "clear or
convincing evidence" or a "preponderance of evidence." However,
Balbuena has stated no case law to support the proposition that a
"substantial evidence" standard at a hearing to remove a child from a
kinship foster home violates due process.

Additionally, Balbuena takes issue with the fact that New York law
does not require the same person who oversees the hearing to write the
decision after hearing. In some instances, such as in the present case,
the administrative law judge overseeing the hearing is someone other
than the Commissioner's designee who writes the hearing decision.
Balbuena claims this is a violation of due process because the person
deciding the case "makes credibility determinations on witnesses that he
or she did not actually see testify." However, the Second Circuit has held
on multiple occasions that it does not violate due process for one person

within an agency to preside over the hearing and another to make the decision.  See Keeler v. Joy, 641 F.2d 1044, 1053 (2d Cir. 1981); Yaretsky v. Blum, 629 F.2d 817, 822 (2d Cir. 1980) (reversed on other grounds).

Balbuena further contends that the amount of time it took the hearing to be conducted and then decided violated due process.  The hearing took place on four days over two months.  The decision was issued 70 days after the conclusion of the hearing.  While neither party explains in detail why the hearing took two months, State Defendant asserts that the schedules of counsel, witnesses, and the ALJ, as well as intervening religious holidays, were factors in the decision.

This court could find no case law directly on point regarding how quickly a removal hearing must be held in order to satisfy due process. Balbuena cites cases, in which children were taken from their biological parents, where courts have determined that the hearings should have taken place in a matter of days, rather than weeks.  See, e.g., Whisman v. Rinehart, 119 F. 3d 1303, 1310 (8th Cir. 1997); Brown v. Daniels, 128 Fed. Appx. 910, 915 (3d Cir. 2005).  Defendants, on the other hand, cite support for the proposition that given the length of the hearing record, the amount of time to render the decision does not rise to the level of a due process violation.  New York State Nat. Org. for Women v. Pataki, 261 F.3d 156 (2d Cir. 2001); Cert Den., 534 U.S. 1128 (2002).

The facts of this particular case do not support a finding that Balbuena's due process rights were violated. New York law states that "upon request of either the appellant or a social services agency, the fair hearing may be rescheduled, upon a showing of good cause for requesting the delay." 18 N.Y.C.R.R. § 358-5.3. The minutes of the hearing do not provide any explanation for the delay, but they also do not provide any objection to such delay. Further, Balbuena waited 61 days to request a hearing—a significant amount of time for a person arguing that the hearing should be decided in a matter of "days" to protect the liberty interest at stake. In light of these facts, together suggesting no urgency mandating a more speedy decision, this court declines to hold that this delay violated due process or that State Defendant has a policy of delaying administrative hearings.

Finally, Balbuena alleges that because any hearing decision ordering a foster child to be returned to his or her kinship foster parent's care may be effectively vacated by an order of the New York State Family Court, the hearing does not provide Balbuena with a meaningful post-deprivation remedy. Because the facts of this case do not include such an order, specific facts regarding such post-remedy procedures are not in front of the court. Thus, the court declines to reach this issue.

## Balbuena's Fourth Amendment Claim

Balbuena has also alleged that the removal of her nieces from her kinship foster home on an emergency basis, where there was no

emergency, violated her Fourth Amendment right to be free from unreasonable seizures. Because it has been determined that the removal correctly followed immediate removal procedures that are in conformance with due process, this claim is dismissed.

Additionally, the Supreme Court has stated that a person is seized and can invoke Fourth Amendment constitutional safeguards only when "by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Thus, any potential Fourth Amendment claim would have belonged to A.C. and H.C., not Balbuena, so Balbuena has no standing to bring this claim on her own behalf. See Donald v. Polk County, 836 F.2d 376, 384 (7th Cir. 1988).

## Balbuena's State Law Claim

In addition to the due process and Fourth Amendment claims described above, Balbuena seeks to include an Article 78 state law claim as a claim pendant to these proceedings. However, the Eleventh Amendment bars this court from granting relief against state officials for violations of state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). Had Balbuena wished to appeal the agency decision after the hearing, she should have filed for Article 78 review with the state court within the applicable statute of limitations. Balbuena's claim for Article 78 review is denied for lack of jurisdiction.

## CONCLUSION

The motions for judgment on the pleadings brought by State

Defendant and Agency Defendants are hereby granted.

SO ORDERED.

Dated:     New York, New York
           September 28, 2007


_____
THOMAS P. GRIESA
U.S.D.J.